ANDREW HOWELL *et al.*, plaintiffs in error, *vs.* GEORGE A. GORDON, defendant in error.

1. In a claim case it is not necessary for the plaintiff in *fi. fa.* to prove the levy and the handwriting of the sheriff on the trial. The sheriff's official entry on the *fi. fa.* that he has made the levy, is sufficient evidence of that fact, and the Court will recognize the genuineness of his signature to the entry, as he is an officer of the Court, without proof.

2. The Courts of this State have no jurisdiction to render a valid judgment against a citizen of another State in a common law action, unless he has been within the limits of this State, and has been served with process while in this State. And a judgment confessed by the agent of such non-resident citizen, who has never been served in this State, would not bind third persons, and if it is levied upon property claimed by a third person, he may deny the validity of the judgment on the ground that the Court had no jurisdiction of the person of the defendant.

3. Where an agent was appointed in this State, by a non-resident person, to look after or act as agent for certain lots of land, with no other or general powers, and an attachment was issued against said non-resident owner, and levied upon said lots, the agent, by virtue of this authority, was not authorized to confess a general judgment binding upon said defendant in attachment.

4. The war revoked the agency of a citizen of this State, in this State, for a citizen of Massachusetts, which existed when the war commenced, without any act of revocation or renunciation by the parties.

Claim. War. Agency. Before Judge KNIGHT. Lumpkin Superior Conrt. September Term, 1869.

A *fi. fa.*, in favor of George A. Gordon against George William Gordon, was levied upon the four-fifths of certain lands in said county, as the property of said defendant, and Andrew Howell and Daniel Howell claimed the same. On the trial, George A. Gordon's attorney read in evidence said *fi. fa.* It was in the usual form of a common law *fi. fa.*, for $823 00, principal, $268 84, interest up to the 6th of August, 1866, the date of the judgment, and $10 00, costs, was issued on the 17th of August, 1866, and levied the 2d of October, 1866. He next put in evidence a deed from Hezekiah Kelly to George William Gordon, conveying said property on the 17th of April, 1860, and proved that a notice of the levy was served on the person in possession in the latter part of

December or first of January, (of what year does not appear.) It was shown that George William Gordon was a citizen of Boston, Massachusetts, and that George A. Gordon, as his agent, took possession of said property in 1860, under said deed, from Kelly.

In the examination of the witnesses it came out that the claimants bought said property in 1861 at sheriff's sale, and it was shown that in 1863 it was again sold at a confiscation sale of the Confederate States, and the purchaser at this last sale swore that he took possession, and held it till he was removed by United States troops. Whether claimants took possession, the witnesses were in doubt, and it was also left in doubt whether George A. Gordon was in possession as agent of George William Gordon, at the date of said sheriff's sale. One DEXTER testified that he (Dexter) was appointed agent, by power of attorney from George William Gordon, to act as his agent for these lots, and since the war confessed judgment for George William Gordon to George A. Gordon, in the Superior Court of Lumpkin county, under said power of attorney. This confession is doubtless the foundation of said *fi. fa.* against George William Gordon, but no part of the record, nor said power of attorney was introduced.

GEORGE A. GORDON testified, that he took charge of said property for George William Gordon on the 20th of November, 1860, and so held it till the 31st of August, 1861, and that he then publicly removed, and ceased to act as such agent, because George William Gordon was regarded as an alien enemy; that at sheriff's sale, in September, 1861, said property was sold as Kelly's property, and bought by Howell & Wood, and he told Wood just after the sale that Kelly had no title; that in 1866, George William Gordon sent Dexter a power of attorney to act in his name and behalf with reference to these lots; that he was with Riley when the Confederate States marshal put him in possession in 1863; that Howell took possession before that, and paid him rent for his fifth of the property.

The claimants read in evidence a sheriff's deed, dated the 3d of September, 1861, conveying said land to A. Howell

and J. E. Wood, as purchasers under a *fi. fa.* in favor of one Thompson against Kelly, founded upon a judgment from from said Court, dated 22d July, 1861. They read also the *fi. fa.*, and proved notice of the levy upon the tenant according to law; they showed that at the sale George A. Gordon was present, and gave notice that he claimed one-fifth of said lands, but gave no notice of George William Gordon's claim. It was shown that early in 1861 Kelly ran away much in debt, and claimants offered a judgment against Kelly, founded on a note dated since his sale to Gordon, to prove Kelly's insol vency, but the Court rejected it.

Howell testified that he bid off the land, and after the sale let Wood take a half interest; that George A. Gordon was present, and gave no notice of George William Gordon's claim, and he, Howell, supposed that he got a good title, took possession, and paid George A. rent on his fifth while he worked it, till it was sold by the Confederate States marshal; some time afterwards Woods sold his half to Daniel Howell.

Wood testified, that his impression was that no one told him that Kelly had no title before he took his deed.

Plaintiffs' attorney, in rebuttal, showed that the note upon which the judgment of Thompson vs. Kelly was based, was dated the 19th of June, 1860, due sixty days after date, and that the verdict and the judgment were dated the 23d of July, 1861.

Claimant's attorney requested the Court to charge the jury that the plaintiff in *fi. fa.* must produce the *fi. fa.*, and prove the levy by the levying officer, or prove his signature, and must show, affirmatively, that the sheriff gave notice of the levy to the tenant, within five days from the date of the levy, and that if in either of these plaintiff had failed, the jury should find the property not subject: that if Kelly sold to George. William Gordon when he, Kelly, was insolvent, to delay or defraud his creditors, and then ran away to Massachusetts, where George William Gordon lives, these are badges of fraud; that if George A. Gordon is a relative of George William Gordon, and is seeking to sell said land under said *fi. fa.*, and was agent of George William Gordon

when Howell bid off the land, and gave no notice of George William Gordon's claim of title, that was a positive fraud, and estops George A. Gordon; that if George A. had been acting as agent of George William, he could not, of his own volition, or by any private act, destroy his agency without notice to his principal and the public, and if no such notice was given to Howell, it was a fraud, of which George A. could not take advantage; that if George William Gordon was not in possession of said lands at the date of the levy of this *fi. fa.* against him, plaintiff must show title in George William Gordon, as he would have to do in an action of ejectment; that if claimants took possession under their sheriff's deed, and had held possession for four years before George A. Gordon's levy, then claimants are protected without regard to the date of the judgments; that if said *fi. fa.* showed it was upon a common law suit not begun by attachment, and that George William Gordon was all the time a citizen of Massachusetts, then said judgment was a nullity, and void as to third persons, because the Court had no jurisdiction; that plaintiff in *fi. fa.* was bound to show not only the *fi. fa.*, but the judgment on which it was founded, and a failure to do so was fatal.

The Court charged the jury that a purchaser at sheriff's sale gets only such title as the defendant in *fi. fa.* had; that if the defendant in *fi. fa.* had, before the judgment was obtained against him, sold the property, the purchaser at such sheriff's sale gets no title, and told them to examine the dates of Thompson's judgment and of Kelly's deed to George William Gordon, to see which was the oldest; that if Kelly's sale to Gordon was older than the judgment against Kelly, Howell got no title, unless said sale by Kelly to Gordon was fraudulent, or a sham sale; if fraudulent, it passed no title out of Kelly; fraud can not be presumed, but may be proved by circumstances, like other facts; if Howell bought at a price greatly below its value, and after Kelly's deed to Gordon was on record, the jury might consider these facts and other circumstances of the sheriff's sale, in their inquiry as to whether Howell had notice when he bought, that Kelly

had no title; if taking all those facts and circumstances, the jury believed Howell had such notice, and that Wood was notified that Kelly had no title, then Howell and Wood were not innocent purchasers. If the deed from Kelly to Gordon was not on record at the time of said sheriff's sale, and if neither Howell nor Wood had notice of Kelly's sale to Gordon, they were innocent purchasers without notice. The conduct of claimants at the Confederate sale might be also considered, *i. e.* did they forbid that sale, or claim the land? Service of notice is presumed to have been made by the sheriff. He closed by telling them that the main question was, who had the oldest title.

The jury found the land subject to George A. Gordon's *fi. fa.* Claimants moved for a new trial, upon the grounds that the verdict was contrary to the evidence, etc.; that the Court erred in refusing to charge that it was necessary to prove the levy and notice to the tenant by the levying officer, and in charging, as he did, on that subject; that he erred in his charge as to notice given to Wood of Kelly's want of title, and in laying such stress upon the ages of the judgment and deed from Kelly; in rejecting the judgment offered to show that Kelly was insolvent when he sold to George William Gordon, and for other reasons not noticed by this Court. The Court refused a new trial, and that is assigned as error on said ground.

WEIR BOYD, by HILLYER & BROTHER, for plaintiffs in error.

No appearance for defendant in error.

BROWN, C. J.

1. We do not think the Court below erred in refusing to require proof of the levy in this case, or of the handwriting of the sheriff. The entry of the levy on the *fi. fa.* is an official act, and the Court will take notice of, and recognize the signature of its own officer to the entry, without proof. In a claim case the burden rests upon the claimant to show that it is not genuine, if he denies it, and not upon the plaintiff

in *fi. fa.* The entry is at least *prima facie* evidence of the levy. Nor do we think the failure to give the notice required by the statute to the tenant in possession a proper point of objection by the claimant. He had notice of the levy, as is shown by the interposition of his claim. If any one else is injured by the failure of the sheriff to give the notice, the sheriff is liable to the injured party for the damages, in a proper proceeding instituted for its recovery.

2. If the judgment from which this execution issued is, as it appears from the *fi. fa.* to be, a judgment rendered in a common law action against a citizen of Massachusetts, and a non-resident of Georgia, who was never served with process in this State, the Court had no jurisdiction, and it is a nullity, and may be attacked by the claimant in this case, or by any other person whose rights are affected by it.

3. But it is said in the argument that the action was commenced by attachment, issued against George W. Gordon, the non-resident, which was levied upon the lots of land in dispute as Gordon's property, and that his agent, Dexter, came into Court, and confessed judgment for him, and thereby made it a general judgment. We find no evidence in this record that the proceeding was commenced by attachment. The *fi. fa.* does not show it, nor is there any record in evidence to establish the fact. But if it be so, and the evidence as to the extent of Dexter's authority be correct, it is still bad. Dexter swears he was appointed by power of attorney from George William Gordon to act as his agent *for these lots,* and that since the war he confessed judgment in this case under said power of attorney for Gordon. This evidence, which seems to have been admitted without objection as to the non-production of the power of attorney, simply authorized the agent to look after the lots of land in question. But it did not authorize him when an attachment was levied upon them, to go into Court, and confess a judgment binding all the other property of the defendant in attachment. We speak from the evidence before us as to the extent of the authority given by the power of attorney, and we hold that it conferred upon the agent no such power as he has exercised

in the confession of a general judgment against the defendant in a proceeding commenced, as is now claimed, by attachment.

If the action was commenced at common law, and the defendant was a citizen of Massachusetts, and was never served in this State, he could not give the Court jurisdiction by sending an agent to Georgia to confess a judgment for him after the action had been instituted without proper service, and whatever effect such judgment, so confessed, may have as between the parties, it may be attacked by the claimant whenever it is necessary for the protection of his rights.

4. It may be proper to add, that if the power of attorney was given prior to the war, it was revoked by the war, as the principal was a citizen of Massachusetts, and the agent a resident or citizen of Georgia, and no act of revocation or renunciation by the parties was necessary. Whenever the parties became alien enemies, by the laws of war, the agency was at an end. It ceased by operation of law. The same remark applies to the agency attempted to be set up in George A. Gordon for George W. Gordon. The agency ceased by operation of law when the war commenced, and George W. Gordon would not be bound by any act done, or admission made, by George A. Gordon, at the sheriff's sale, in 1863, when Howell bid off the land at sheriff's sale as the property of Kelly.

There were numerous points made, and charges asked, as appears by this record. But we do not deem it necessary to notice at greater length the errors assigned, on the refusal of the Judge to charge as requested. Upon the whole we see but little in the other charges to disapprove. The questions considered cover the important points in the case, and will probably furnish safe rules to guide the Court in the next trial.

Judgment reversed.