*A. H. Thompson* and *R. W. Martin,* contra.

---

## FORRESTER *v.* FORRESTER.

1. (*a*) Marriage imposes upon a husband the legal obligation to provide means for the maintenance of his wife.

(*b*) Abandonment by the husband and a wilful failure to provide for the maintenance and support of his wife creates a liability on the part of the husband to the wife, which is a lawful demand, and which when legally enforced is called alimony.

2. The property of a non-resident husband which may be found in this State may be seized and appropriated to the support of his wife, by proper proceedings quasi in rem in a court of equity which has jurisdiction of the subject-matter of the suit and possession of a res which may be subjected.

3. In a proceeding in rem service may be perfected by seizure of the res.

4. Lack of service does not necessarily imply lack of jurisdiction.

No. 3499. June 7, 1923.

Alimony, etc.   Before Judge Eve.   Worth superior court. October 27, 1922.

Mrs. Mamie Forrester brought her petition against A. L. Forrester, her husband, alleging that he is a resident of the State of Alabama; that he left petitioner without means of support, though she was unable to earn a livelihood; that she has no property, but is entirely dependent upon her father for support; that she and her husband are living in a bona fide state of separation; that she is a resident of Worth County, in this State, where this suit is brought; that the husband is the owner of a chose in action, to wit, a promissory note for the principal sum of $600, which amount is now due; that suit upon the note has been brought by A. L. Forrester; that there is no defense to the suit, and judgment by default will be rendered at the next term of the city court, and when judgment is rendered execution will issue thereon and be enforced against the property of her father, John M. Evans, maker of the note; that this is the only property owned by A. L. Forrester in the State of Georgia; that petitioner can not obtain a valid decree against him for alimony in this State; and that it is necessary, in order to protect the rights of petitioner, that a court of equity seize the property referred to as a chose in action, by a decree of the court for the use of the petitioner. The prayers are, that petitioner be granted permanent alimony and attorney's fees; that a decree in rem be entered in her favor against the property of the defendant, that is, the judgment and execution in the sum of $600, represented by the note referred to; that she have a judgment against Forrester for permanent alimony in such an amount as the court deems just; that a decree be entered in her favor as a judgment in rem against the property described; that such decree and judgment be declared a lien upon the property; and that general relief be granted. Service of the petition was made by publication.

The defendant made a special appearance through his attorney,

and moved to dismiss the case on the ground that the court was without jurisdiction, and that the defendant had not been properly and legally brought before the court, for the reasons that "The petition of the plaintiff shows on its face that this defendant has not had any proper and legal service, or that the defendant has waived service personally or by attorney, or that the court has taken any action whatever to give it jurisdiction over this defendant or over his property to authorize any judgment in personam or in rem against him." The court overruled the motion, and to this judgment the defendant excepted.

*Passmore & Forehand,* for plaintiff in error.

*Smith & Christian,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) We think that the judge of the superior court properly overruled the motion to dismiss the plaintiff's equitable petition. To this motion to dismiss, as set forth in the statement of facts, the presiding judge attached the following qualifying note: "It was admitted by attorneys Passmore & Forehand that all legal requirements for service had been met." The lack of jurisdiction which is asserted by the plaintiff in error depends upon the insistence that a judgment for alimony being an action in personam, and the defendant husband being a non-resident of this State, service by publication is insufficient. To state the contention of the plaintiff in error in his own language as taken from the brief of his counsel: "The attorneys for plaintiff in error, making a special appearance only for this purpose, presented a motion to dismiss the plaintiff's petition on the ground that the petition on its face showed that the superior court of Worth county did not have jurisdiction to render a judgment in rem or otherwise for alimony against a party residing in the State of Alabama. The motion, which is sent up as a part of the record, was overruled; and the only question therefore to be passed upon is whether or not the court below could acquire jurisdiction over the defendant by publication." As will appear from what we will say later, we do not know that the matter of publication is altogether so important as it seems to be considered by the plaintiff in error; but considering the allegations of the petition, it is our opinion that the court had jurisdiction of the subject-matter of the suit and of the res which the petition sought to have the court apply to the satisfaction of

the plaintiff's demand. We think that the principles underlying the decision of the lower court are of general application, and we see no reason why an exception should be made in the case of an application for alimony by which this proceeding should be excluded from the operation of the general rule. This plaintiff, a resident of Georgia, has a just claim for support against her lawful husband. At common law as well as the statute of this State, a husband is bound to maintain and support his wife; whatever sum may be necessary for that purpose is a demand which, when liquidated by the court by a judgment fixing its amount in such sum as may appear to the court to be just and adequate, is called alimony. Her husband, the debtor, after abandoning her takes up his residence in the State of Alabama. A citizen of this State, who resides in Worth county, owes the non-resident a debt of $600, besides interest. Is the plaintiff in such a case remediless to enforce her legal demand for support, merely because this demand is for support, otherwise called alimony, instead of being a claim of some other nature? If the plaintiff in the present case, instead of being the wife of her non-resident debtor, were any other person to whom he was indebted, could she not enforce her demand by an attachment based upon non-residence and perfect service by summons of garnishment upon the debtor of the non-resident? We apprehend that there can be but one answer to this question.

Aside from the fact that the demand for alimony can not be enforced by attachment and garnishment, because this is a proceeding in law, is the fact that a demand for alimony is unliquidated and must remain unliquidated until fixed by a decree of the court, and this itself would absolutely preclude the plaintiff in the suit for alimony against a non-resident from proceeding by attachment. At law this plaintiff is remediless; and in such a case, and whenever and wherever the law by reason of its universality is impotent to succor one who has a right, equity supplies the needful remedy. Whether the use of the term "equitable attachment" be appropriate or not, it is our opinion that equity, by a proceeding in rem and the seizure and appropriation of the res, can condemn all or so much of the res as is necessary for that purpose to the just demands of a citizen of this State where the res, the property of the non-resident, is located in this State. It is

true that our laws have no extraterritorial effect, and it may be true that in a particular case personal service can not be perfected other than by publication; but the courts here still have jurisdiction of the subject-matter of the suit and of the res, and can apply the one to the other by a judgment in rem, as suggested by Chief Justice Fish in *Hood* v. *Hood,* 130 *Ga.* 610, 616 (61 S. E. 471, 19 L. R. A. (N. S.) 193, 14 Ann. Cas. 359). It is stated in the brief (and so far as our examination has extended it seems to be true) that the precise question now before us has never been directly decided in this State. However, it is insisted that under the rulings in *Fleming* v. *West,* 98 *Ga.* 778 (27 S. E. 157), *Hood* v. *Hood,* supra, *Tennessee Fertilizer Co.* v. *Hand,* 147 *Ga.* 588 (95 S. E. 81), and *Mull* v. *Akins,* 153 *Ga.* 92 (111 S. E. 650), service by publication of a non-resident of the State is not sufficient to give the courts of this State jurisdiction so far as to authorize a decree for alimony. In replying to this insistence we would first call attention to the well-recognized difference between a judgment in personam and a judgment in rem as well as to the fact that while a proceeding may not be in perfect strictness an action in rem (for in such a case no service is necessary), the books are full of equitable proceedings in which such proceedings are classified as quasi in rem or pro modo in rem, where service may be effected by the mere seizure of the res which is within the jurisdiction of the court; and it has also been held that the mere filing of an equitable petition in which the res is located and described, and a seizure of the res and its application to petitioner's demand is prayed, is sufficient service.

The plaintiff in error insists in the brief that in this case the debtor in Worth county, Mr. Evans, is not a party to the suit, and that he is a necessary party; and attention is also called to the fact that it does not appear from the petition that there has been an actual seizure of the res by the court. It is sufficient at this point to say that the plaintiff in error could not raise these points in the lower court while protesting the jurisdiction of the court; for these contentions are in effect demurrers, and to demur is to plead, and pleading waives lack of jurisdiction. Consequently we can not pass upon these matters which were not submitted to the lower court.

We will inquire, then, whether the rulings of this court, supra,

sustain the contentions of the plaintiff in error and whether for that reason the trial judge erred in overruling the motion to dismiss, based upon the point that the court was without jurisdiction. What was said by Mr. Chief Justice Simmons as to the nature of the proceeding in *Fleming* v. *West,* supra, on p. 780, was not even referred to in the headnote, to which under the law the entire court is committed, and which is at last the authoritative expression of the court as such. The statement therefore that "While the decree in such a case is in rem in so far as it adjudicates as to the marital status, yet if it undertakes as an incident of the divorce proceeding to deal with the property rights of the defendant, it becomes in that respect a proceeding in personam," is mere obiter. The decision of the court did not at all turn upon that observation of the author of the opinion, nor was it controlled by it. Another point was involved in the opinion, and upon this point alone the case was decided, as will appear from the headnote, which is always the expression of the court as a whole. The following is the headnote: "Where, in a divorce case, service was effected upon the respondent as a non-resident by publication, a decree of divorce rendered at the *first term* [italics ours] thereafter, setting apart as alimony for the wife and a minor child certain land alleged to be the property of the husband, was, in so far as it affected the title thereto, void as to him and as to those claiming under him by a conveyance previously made. The court had no authority or jurisdiction to render any such decree at the *appearance term* [italics ours], in so far, at least, as the decree related to alimony." In *Hood* v. *Hood,* supra, this court held that "A judgment in personam for temporary alimony and attorney's fees can not be lawfully rendered in a divorce suit brought against a non-resident husband, who is not served with process in this State, and does not appear in the case, but is only constructively served by publication." In our opinion the ruling of the lower court in the case at bar is not in conflict with anything said by Chief Justice Fish either in the headnote or the opinion in *Hood* v. *Hood.* In that case the court was dealing with a judgment which was plainly one in personam, being a " judgment against the defendant for $20.00 per month from this day," and for $100.00 as attorney's fees. On the other hand, in the case at bar the petitioner confines her request in every portion of her

petition to a judgment in rem; and to show that Judge Fish, speaking for the court, was not attempting to rule that alimony might not be obtained by a judgment in rem, the court in the *Hood* case construed the ruling in *Fleming* v. *West,* supra, just as we now do, as not being a ruling upon this subject.

The language at the bottom of page 612 in the *Hood* case is: " Although this court has never positively decided that this principle is applicable to a judgment for alimony, rendered in a divorce suit against a non-resident defendant, in which there was neither personal service upon, nor appearance by, the defendant, it strongly intimated as much in *Fleming* v. *West,* 98 *Ga.* 778 (27 S. E. 157), where the question was presented and discussed; but the decision was finally based upon the proposition that a decree for divorce and permanent alimony could not be granted at the first term after service by publication upon a non-resident defendant." After quoting from the opinion of Chief Justice Simmons in *Fleming* v. *West,* and referring to the case of *Stallings* v. *Stallings,* 127 *Ga.* 464 (56 S. E. 469, 9 L. R. A. (N. S.) 593), to show that the decision in that case did not turn upon any question involving a non-resident, for the reason that the defendant was alleged to be a legal resident of the State though out of the State at the time, it was held that he was not a non-resident in the strict meaning of the term, and " that service could not be perfected on him as a non-resident." Judge Fish then proceeds to restrict the case very properly to the precise issue involved, and says: " It seems, however, to have been. uniformly held, in other jurisdictions where the. question with which we are dealing has arisen, that a purely personal judgment or decree for alimony, rendered in a divorce proceeding, in favor of a wife against her non-resident husband, who has not been served with process in the State in which the suit is instituted, but has been constructively served by publication only, and who has not appeared in the case, is void even in the State where rendered." But immediately following this the learned Chief Justice uses the following language (page 614) : " It has been held, however, in some cases that a decree or judgment for alimony, based upon constructive service only, is valid as against the property of the defendant husband which is within the territorial jurisdiction of the court, and is specifically proceeded against in the divorce pro-

ceeding and described in the petition for divorce and alimony, and from which the alimony is set apart, or upon which the judgment therefor is decreed to be a lien; it being held that as to such property such a proceeding is in rem." Citing Harshberger v. Harshberger, 26 Iowa, 503; Twing v. O'Meara, 59 Iowa, 326 (13 N. W. 321); Wesner v. O'Brien, 56 Kan. 724 (44 Pac. 1090, 32 L. R. A. 289, 54 Am. St. R. 204); Rogers v. Rogers, 56 Kan. 483 (43 Pac. 779).

In the discussion of the *Hood* case, supra (page 616), the court, speaking through Judge Fish, expressly declined to rule on the question now before us; and the final conclusion of the case and the result reached amount only to a ruling to the effect that a judgment against a garnishee is void if the original judgment against the principal debtor is void. We quote from page 616 as follows: "In Thurston v. Thurston, 58 Minn. 279 (59 N. W. 1017), it was held, that a wife could maintain, in the State of her domicile, an action for alimony, to be awarded her out of the property of her husband in that State, and could make any person having possession of the husband's property, or holding title in the same in trust for him, a party to such action, for the purpose of applying the same to the payment of the alimony awarded her, and this would be a sufficient seizure of the property to enable her to proceed by constructive service, against her husband. In the case with which we are dealing, however, it is perfectly clear that the judgment for temporary alimony and attorney's fees is not, in any sense, a judgment in rem, but is purely a judgment in personam. The court did not have in its grasp any property belonging to the non-resident husband; and did not even attempt to render a judgment, in the nature of a judgment in rem, against any property of the defendant within its territorial jurisdiction. While the petition alleged that the defendant had an interest in the estate of his deceased father, which estate, according to the allegations of the petition, was in the county where the suit was brought, and prayed that the administratrix upon this estate should be made a party to the proceeding, and that permanent alimony should be awarded the plaintiff out of such interest, no effort was actually made to bring this interest of the defendant in such estate before the court. The administratrix was not made a party to the case, and process was not even prayed against her. Whether

she could, under the laws of this State, have been made a party to the proceeding for the purpose indicated in the petition, and whether, if she had been, the distributive share of the non-resident husband in the estate of his deceased father, in her hands as administratrix, could have been reached by a judgment for temporary alimony, it is useless to inquire. It appears from the opinion in Smith *v.* Smith, supra, that this could not have been done under the law in the State of Vermont, when that case was decided. What could have been done by the plaintiff in the divorce proceeding which is before us, or what might have been done therein by the court, under a different set of circumstances, are not questions before us. The question for our determination is, what was the effect of that which was done? We have seen that the judgment for temporary alimony and attorney's fees was a mere general judgment against the defendant, and that this judgment was absolutely void, for want of jurisdiction of the person of the defendant. It follows, therefore, that this judgment could not be the basis for a judgment against the garnishee, as there has to be a valid judgment against the principal defendant before there can be a lawful judgment against a garnishee."

The language used in the opinion (130 *Ga.* 616) was doubtless the intimation upon which the present suit was predicated. It appears plainly from what is said in the *Hood* case, and the construction therein placed upon the *Fleming* case, that the court has hitherto declined to decide the point which we must now adjudicate. We think, as held by the Supreme Court of Minnesota in Thurston *v.* Thurston, supra, that a wife can maintain, in the State of her domicile, an action for alimony to be awarded her out of the property of her husband in that State, for the purpose of applying the same to the payment of the alimony awarded, and that this would be a sufficient seizure of the property to enable her to proceed by constructive service against her husband. In Pennoyer *v.* Neff, 95 U. S. 714 (24 L. ed. 565), the court had under consideration service of non-residents by publication, and held that a personal judgment is without any validity if it be rendered by a State court in an action against a non-resident of the State who was served by publication but upon whom no personal service within the State was made and who did not appear; but it also held that " The State, having within her territory property of

a non-resident, may hold and appropriate it to satisfy the claims of her citizens against him; and her tribunals may inquire into his obligations to the extent necessary to control the disposition of that property." Also: "Substituted service by publication, or any other authorized form, is sufficient to inform a non-resident of the object of the proceedings taken, where property is once brought under the control of the court by seizure or some equivalent act."

"The law assumes that property is always in possession of its owner in person or by agent; and proceeds upon the theory that seizure will inform him not only that it has been taken into possession of the court but also informs him that he must look to any proceeding authorized by law for its condemnation and sale; . . in other words such service may answer in all actions which are substantially proceedings in rem." Where a party has property in a State and resides elsewhere, his property is justly subject to all valid claims that may exist against him there; but beyond this, due process of law would require appearance or personal service before the defendant could be personally bound by any judgment rendered." Cooley on Constitutional Limitations, 404, cited by Mr. Justice Field in Galpin v. Page, 3 Sawyer, 93. "The learned author does not make it a condition that there should be a preliminary seizure of the property by attachment; he lays down the rule that all a person's property in a State may be subjected to all valid claims there existing against him." Dissent in Pennoyer v. Neff, supra. In Jarvis v. Barrett, 14 Wis. 591, the court says: "The essential fact upon which publication is made to depend is property of the defendant in the State, and not whether it has been attached. . . There is no magic about the writ of attachment which should make it the exclusive remedy. The same legislative power which devised it can devise some other, and declare that it shall have the same force and effect."

The particular means to be used to subject the property of a non-resident, which is within the State, so that a resident creditor may not be helpless and remediless, falls within the powers of a court of equity, which can so mold its decrees as to give relief; and so we conclude that where service has been effected by seizure and publication, property of a non-resident debtor, even one who owes his wife alimony, may by a proper proceeding in rem be

subjected. In our opinion there must at some stage of the proceedings, be a seizure in this State of the property of the nonresident; and the court may appoint a receiver to hold the res for the court, and the garnishee must be made a party in the proceeding; but these are matters of procedure, and do not touch the question of jurisdiction raised by the motion to dismiss. The court has jurisdiction to order an amendment to the petition, or to allow such amendment as may be necessary to perfect service or bring in all necessary parties; but it can not be said that it has no jurisdiction of the subject-matter, the res specified and described in the petition, and to appropriate it to the payment of the plaintiff's demand. See opinion by Chief Justice Jackson in *Harris* v. *Palmore, 74 Ga. 273;* also *Hamil* v. *Flowers, 133 Ga.* 216, 222 (65 S. E. 961).

Section 5554 of the Civil Code provides: " Whenever any nonresident .. . claims or owns title to or an interest, present or contingent, in any real or personal property in this State, service on such non-resident . . may be made by publication in cases affecting such property where proceedings are brought, . . to make any decree or order in which the subject of the action is real or personal property in this State, in which a non-resident . . has or may have or claims an interest, actual or contingent, and in which the relief demanded consists wholly or in part in excluding him from an interest therein." " 7. Where a nonresident . . has or may have or may claim a present, future, or contingent interest in any property in this State." It can not be said in this case otherwise than that the defendant not only claims but owns all interest in the subject-matter or chose in action, consisting of the debt of Mr. Evans to himself, and the purpose of the suit is to exclude the defendant " from any interest therein."

The ruling in *Tennessee Fertilizer Co.* v. *Hand,* supra, is not strictly in point; but in any event it is not controlling. What was said by Mr. Justice Atkinson in his dissenting opinion (and as to this particular point Mr. Justice Gilbert concurred) is in my opinion sound law, and the principle is well stated: " The plaintiff, not having a perfect right to sue, could not proceed by attachment at law, under the Civil Code, §§ 6035, 5055 et seq.; but having a right to redress the wrong, and there being property

within the State which could be seized, equity would afford a remedy." So far as it relates to the point now involved, the case just cited is only a four-judge decision. Likewise the case of *Mull* v. *Akins,* 153 *Ga.* 92 (supra), was rendered by only three Justices, two Justices being absent, and Mr. Justice Hines dissenting in the following language, which is adopted as a part of this opinion: " Where a creditor without judgment or other lien holds a debt against an insolvent non-resident debtor who owns land within the jurisdiction of the court, which he has incumbered by a security deed, and where the creditor, from insolvency or inability, is unable to redeem the lands embraced in such deed, by paying the principal of such debt and the interest thereon to maturity, as is required by our statute in order to have the same levied upon by attachment, such creditor can apply to the superior court of the county in which such lands are situated, to have the same seized by a receiver appointed by the court, for the purpose of satisfying the creditor's debt; and the seizure of the res gives the court jurisdiction of the subject-matter. As to property within the jurisdiction of the court personal service is not required. Jurisdiction of the res is obtained by a seizure under process of the court, whereby it is held to abide such orders as the court may make concerning it."

In our opinion the court had jurisdiction to supply a well-defined remedy, equitable in its nature, and the court did not err in so holding. Questions of parties and procedure, of the res, or any other proceeding which may be necessary to create an effective remedy, are within the jurisdiction of a court of equity, which can so mold its decree as to apply the remedy.

*Judgment affirmed. All the Justices concur, except Beck, P. J., and Hill, J., dissenting.*