53956. PASTIS et al. v. COBB EXCHANGE BANK.

QUILLIAN, Presiding Judge.

This is an appeal from a jury verdict and judgment in favor of the plaintiff bank in a suit upon a note. The Cobb Exchange Bank filed a complaint against Johnny L. Pastis and Mary R. Pastis on a note in the amount of $23,503.87, plus interest, costs of collection and attorney fees. Defendants filed a denial and counterclaim in the amount of $105,000. The jury found for the plaintiff bank in the amount of $26,496. The court entered judgment for the plaintiff in that amount and defendants appeal. *Held:*

1. Plaintiffs filed a motion to dismiss defendants' appeal on the ground that their enumeration of errors was not filed within the requisite 20 days after docketing of the appeal in this court. The motion is denied, as Rule 14 (a), of this court (Code Ann. § 24-3614 (a)), provides: "Failure to file the enumeration of errors within the time specified in these rules shall subject the offender to contempt. Failure to comply with an order of this court directing the filing of the enumeration of errors shall cause the appeal to be dismissed." This court did not issue an order to defendants to file their enumerations of error. Thus, the appeal is not subject to dismissal. See *Worthington Financial Services v. Ivey,* 135 Ga. App. 577 (218 SE2d 640).

2. Defendants enumerate as error a denial of their request for a directed verdict and also contend the verdict was contrary to the evidence. As these allegations address the sufficiency of the evidence they will be discussed together.

The defendants stipulated into evidence a prima facie case on the note due the bank, that is — defendants executed the note, the contents are correct, and the amount stated in the complaint is due and owing. This leaves in issue only the sufficiency of the evidence to

support the counterclaim.

The counterclaim was predicated principally on the testimony of the defendants, Johnny L. Pastis and his wife Mary, that he had rented a safe-deposit box from the plaintiff bank on December 5, 1972 and had placed therein $105,000 in cash on December 7, 1972. He had given his key to the box to his attorney. He had the safe-deposit box drilled open on September 11, 1973 after he had gone to the attorney for the key and was informed that it had been misplaced. When the safe-deposit box was opened it contained only one rubber band. The defendant testified that a bank vice-president assisted him in placing the money in the box and was present when the box was opened and exclaimed: "Johnny, I swear to you, I don't know what's happened." The bank officer denied both allegations.

Defendant, citing *Buena Vista Loan &c. Bank v. Bickerstaff,* 121 Ga. App. 470 (1) (174 SE2d 219), cert. den., contends the relationship between a bank and a customer who has rented a safe-deposit box therein in which he places valuables, is that of a depositary for hire. *Buena Vista* distinguishes *Tow v. Evans,* 194 Ga. 160, 163 (20 SE2d 922), which held that "[w]here a banking corporation leases to its customer a safety-deposit box in the bank's vault, the relation of lessor and lessee arises." We concur with the opinion in *Buena Vista* that "the mere labeling of the relationship" such as "lessor-lessee" is not fully dispositive of the duty of a bank to its customer "for a mysterious disappearance of the contents" of a rented safe-deposit box. Whatever label is attached to this transaction, under the factual setting of this case, we find the law of bailment applies. *Buena Vista Loan &c. Bank v. Bickerstaff,* 121 Ga. App. 470, 474, supra. "Depositaries for hire are bound to exercise ordinary care and diligence . . ." Code § 12-404. "In all cases of bailment after proof of loss, the burden of proof is on the bailee to show proper diligence." Code § 12-104. This burden on the bailee is regarded as a presumption of negligence, a rebuttable inference, thus requiring him to produce evidence of care and diligence to negate the presumption. *Buena Vista Loan &c. Bank v. Bickerstaff,* 121 Ga. App. 470, 476, supra.

It would be extremely difficult to paraphrase the evidence in this extensive transcript of 564 pages. Suffice it to say that it is lengthy and conflicting. Questions of credibility arose as to some of the witnesses. However, the evidence clearly showed the bank's policy and procedure for persons to gain access to the vault and the safe-deposit boxes. "Where some evidence of this nature is adduced in the trial of a case, whether the bailee has overcome the rebuttable inference [of negligence] would ordinarily be a matter for jury determination." *Buena Vista Loan &c. Bank v. Bickerstaff,* 121 Ga. App. 470, 476, supra. The jury heard, construed, and resolved the evidence presented to it and was properly instructed as to the law. On appeal this court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict. *Boatright v. Rich's, Inc.,* 121 Ga. App. 121 (1) (173 SE2d 232). Where the evidence of the plaintiff and defendant is in conflict, the jury is the final arbiter. *Smith v. Hornbuckle,* 140 Ga. App. 871, 875 (232 SE2d 149). There is sufficient evidence to support the verdict and the court did not err in denying the motion for a directed verdict for the defendant.

3. In their amended motion for new trial, defendants aver that "the signature card (blue) introduced as Exhibit 2 has been re-examined by James H. Kelly, a handwriting expert, and witness for the plaintiff and that said expert's re-examination of Exhibit 2 shows, and the witness will testify on a second trial . . . that the hyphen between '1, 2' and '1, 5' on Exhibit '2' was altered since the witness photographed the document prior to testifying in court and the time it was re-examined November 4, 1975."

The affidavit of Mr. Kelly, in support of the motion shows that he was the same expert that testified on behalf of the plaintiff in this case. He was the "chief document examiner in the State Crime Laboratory in Atlanta." He had examined and photographed the document in September, 1973 and June, 1975. Re-examination on November 4, 1975 "of the date '12-15-72' on Exhibit [2] discloses that the '-' on the numeral '1' has been altered. The alteration occurred since [he] photographed the document in June, 1975. The '-' has been traced so as to leave little doubt that it is on the top of the '1'." The trial

was held July 16-18, 1975.

The alteration of the hyphen referred to by the expert on the bank's "contract card" was testified to by this same witness during the trial of this case. There he stated: "Referring to the area, of course — in the area of the one with the cross mark upon it. The 1 (one) was placed on the paper first and, then, the dash or the cross mark was on top of the 1 (one). In other words, it was placed last in the sequence of order. Q. . . The up and down mark was placed first? A. Yes, sir. Q. And, then, the little mark going crossways was on there second? A. Yes, sir."

A motion for new trial upon the ground of newly discovered evidence is addressed to the sound discretion of the trial court and except for obvious abuse appellate courts are reluctant to disturb such ruling. *Bradley v. Bradley,* 232 Ga. 717, 718 (208 SE2d 817); *Henderson v. MARTA,* 141 Ga. App. 509, 510 (233 SE2d 817). The Supreme Court in *Bell v. State,* 227 Ga. 800, 805 (183 SE2d 357), set forth a comprehensive 6 part test for determining sufficiency of a motion for new trial on the basis of newly discovered evidence. Defendant has failed to meet the third and fourth criteria. Three states that such evidence "is so material that it would probably produce a different verdict." Four requires that this evidence "is not cumulative only. . ." Treating these criteria in inverse order, it would appear that the newly discovered evidence shows only that the alteration of the hyphen appearing over the numeral one in this exhibit was made "so as to leave little doubt that it is on the top of the '1'." This is substantially the same testimony this witness gave during the trial. We find it to be cumulative. We are aware that defendant claims that this witness gave later testimony which could be interpreted as conflicting.

Turning to the third criterion of the *Bell* test — we are unable to perceive how this alteration of evidence could produce a different result if a new trial were to be granted. There is no showing as to when the alteration was made — either before or after the trial. If it was made before the trial, this witness used the exhibit during the trial in its altered state and it was observed by the jury in such altered state. If the alteration occurred after the

trial, it could not have affected the jury decision.

As such matters are addressed to the discretion of the court, we find no abuse of discretion in failing to grant a new trial.

*Judgment affirmed. Shulman and Banke, JJ., concur.*

ARGUED MAY 10, 1977 — DECIDED JUNE 9, 1977.

*Stanley H. Nylen,* for appellants.
*Downey, Cleveland & Moore, Lynn A. Downey, Joseph C. Parker,* for appellee.